Counsel, you may proceed. Good morning, Your Honors. My name is Anthony Urie. I'm counsel for the appellant, Frank Tau, in this matter. Would you like me to proceed with my discussion first on the negligence and then the strict liability, or would you like to ask questions? Just for curiosity's sake, since we've just been through a jurisdictional conversation in a similar case, why is there jurisdiction over this case? I was thinking of the same question you were talking to counsel. One, the vessel was in navigable waters, and traditional maritime activity was occurring at the time of the incident. In other words, pre-season vessel preparation by the employees of the vessel was occurring. Yes, but I have a different hypothesis, which is that this case was originally filed, or at least in Volk-Jones Act jurisdiction. Yours did, right? Even if in a proper way. Well, initially, there was a question of fact of whether or not he'd been promised a job. So that was the belief that the Jones Act was. But it's clear that both sides agree that there's no Jones Act case here. That's right. That was withdrawn. There is, I believe, admiralty jurisdiction in this case, General Maritime Law. It's more attenuated than the other one, because in the other one, you have a dispute. In here, you have Tao, who was just an interloper. He was not a seaman. And it was, and the dispute was over nothing having to do with anything having to do with maritime jurisdiction. So we simply have a physical fight on that ship in navigable waters, period. Well, the assailant, Tony Greasy, was an employee of the vessel. There's no dispute about that. He was within the employment of the vessel. He was not going to go to sea with the vessel, but he was living on the vessel, hired by Mr. Malley as a repair person. So he was an employee of the vessel owner, residing on the vessel. The vessel was in navigable waters, and traditional maritime activity was occurring, i.e., vessel repair. Yes, but the assault on Mr. Tao had absolutely no maritime implications, because Tao was not a maritime-involved person. No. Tao was not. He was a guest or invitee. But the other cases that have been discussed in the brief are cases where there is maritime jurisdiction, I believe, when a business invitee becomes injured on another boat, the cruise cases. Well, you're not saying he's a passenger. No, no. There's no common carrier liability, so to speak. No. But if he were a guest on a passenger cruise ship, helping somebody carry bags onto the ship became injured. But he wasn't that either. He had no function on that ship. Pardon? He wasn't that either. He had no function at all on that ship. Well, he had the function of being invited on, the record indicates, by his cousin, I believe. There's an affidavit in there. But he had no maritime function of any kind. He was the guest of his cousin who was on the vessel. Well, Counsel, doesn't this come down to what knowledge Mr. Malley had about the propensity of Mr. Giese? Giese. Giese. Yes. For violence? I don't believe necessarily. I believe that in this case, one, there was the affidavit of probable cause of time arrest. Clearly, the evidence is that Mr. Giese was intoxicated earlier that evening. Do you have evidence that Malley knew anything about this man's physical condition at the time that he took out the rifle and shot the plaintiff? No, but the affidavit of Steve Frago, who was a visitor of Mr. Malley, apparently a dockside companion, is found by Mr. Frago's testimonies in the record, that on occasions when he was visiting Mr. Malley before the incident, he observed beer cans aboard the vessel. Agreed. He said that. Do we have any evidence, though, that Malley himself was aware of this man's propensity to drink, number one, or that he was drunk on the night in question? No, there's no evidence that on the night of the shooting that Mr. Malley had knowledge of the use of alcohol on board the boat. Mr. Malley, in his declaration in response to summary judgment, clearly states that there is a no-alcohol policy on board his vessel. So the issue then becomes, did Mr. Malley implement a policy of no alcohol on the boat? And I argued that the no-alcohol policy is none other than a safety policy. It's for the safety of people coming on board the boat or living on the boat. He didn't want any alcohol. I don't understand how that leads to a negligence determination. If he had a policy and didn't enforce it, why does that mean that he was negligent with regard to the fact of somebody picking up a gun and shooting someone? Well, we believe that once there's a policy implemented, that creates a duty. In other words, if you post a sign on your boat saying, no drugs, no alcohol on this boat, but you don't enforce that, then you have not – then there's – and somebody gets hurt because during alcohol consumption or drug usage, then there's evidence, at least in this case, there's evidence or a genuine issue of material fact, I believe, presented that the vessel owner imposed a duty upon himself for safety of persons aboard the vessel. Now, you're not arguing strict liability here, are you? Well – We're still on reasonable care, right? Yeah. We're talking about reasonable care. Yeah. No, I'm not talking about the de Morton's case. All right. In this circuit. I'm talking about evidence of negligence. As far as I can tell, the one case that supports your position is the Hastie case in the Fifth Circuit. Yes. Every other case that's at all similar says that just because somebody – even if you know somebody's consuming alcohol, that doesn't lead to any reason to believe they're dangerous. Yes. I believe the Hastie case in the McDonoghue v. Celebrity Cruise Line supports our position. In the Hastie case, there was a self-imposed duty by the vessel owner. No intoxicated crew people were allowed back on board the vessel. Brown came back aboard the vessel while intoxicated and injured a fellow shipmate. The court said in that case that the fact that he came back aboard the vessel in breach of the duty, in breach of the rule, self-imposed rule, that that was a jury question that should be decided by the jury. And I submit to Your Honors that in this case, we have something that happened that's very similar to that. We had a self-imposed no-alcohol policy. We have evidence before the night of the shooting by Mr. Frago's testimony that there were beer cans aboard the vessel. When Frago was talking to Malley on board the back deck of the vessel, therefore, Mr. Malley had at least, if not actual notice, constructive notice that the beer cans were being used, drank, i.e., aboard. Counsel, I think we pretty much understand your argument at this point. Why don't we hear from the vessel owner, and you certainly have all the time you need to respond. Thank you. Okay. Good morning, Your Honors. My name is Chip Jordan, and I represent Joe and Joyce O'Malley, or Malley, excuse me, the owners of the St. Jude. Do you want to comment on the jurisdictional question? I'm sorry, Your Honor. Do you want to comment on the jurisdictional question? I will, Your Honor. I believe the jurisdiction issue was answered by the Kermarack case. Which case? Kermarack. It's the Supreme Court decision, Kermarack v. Compagnie Transatlantique. Now, is that cited in any of the briefs? It is cited, Your Honor. It's one of the key cases that both sides have relied on. In your brief? In both briefs. In both? Sorry. And it's the case that stands for the proposition that all persons on board a vessel other than crew members are owed a duty of reasonable care. And in that case, the injury occurred. It was a visitor who came on board a vessel that was tied up in port, and he injured himself on board. And the Supreme Court actually, the lower court, when it addressed this issue, applied state law. And the Supreme Court said that that was inappropriate. The vessel was in navigable waters. The person was injured on board. That satisfied the traditional test under Admiralty law. Here, what we're trying to resolve is the standard of care that a vessel owner owes to an invitee that comes on board. I believe that that gives rise to Admiralty jurisdiction, Your Honor. Now, what about the Hastie case? What's your take on that case? Well, as the Court noted, Hastie is a minority decision. It does not comport with the other cases that we've cited the Court to. Hastie can also be ---- It's an all-controlling Ninth Circuit case, is there? No, Your Honor. Not on this specific issue. So we are certainly at liberty to look at Hastie among other cases. Certainly, Your Honor. All right. Hastie, though, can be distinguished on both the law and the facts of that case. Hastie is a Jones Act case. It's not under the same standard of care that we're addressing here, ordinary care. Under the Jones Act, there is a featherlight causation standard that applies. The Court doesn't discuss this in the case, but I assume that that underlies perhaps the decision. Hastie is also distinguishable on the facts. In Hastie, the intoxicated crew member came back on board or came on board the vessel. The vessel had a zero-alcohol tolerance policy. The captain, the owner's representative, allowed him to stay on board. He went to his cabin. He was going to sleep it off. And apparently, he assaulted his bunkmate. The port police were called. He was moved from the vessel. He stepped away from the port police. He came back on board the vessel and again, apparently, assaulted this same crew member. And Hastie had the misfortune to get himself between these two individuals and was injured. And the Court found that it might be foreseeable, the jury might find that it was foreseeable that allowing an intoxicated crew member, a person who knew was intoxicated, to come on board your boat, that there could be an altercation and somebody could be injured. That's a world away from the facts that we have here. The only knowledge that Mr. Malley had of alcohol use on board the vessel is based on the testimony of the appellant that on one or possibly more occasions when Mr. Malley was on board the boat, the vessel, the Mr. Greasy consumed beer. Other than that, the only other evidence is that there were beer bottles apparently at some point on the vessel. The only difference between this and Hastie, the only factual difference, is that in this case, certainly the jury could infer that Malley knew that Greasy was drinking on the boat. But there's no basis for knowing that he was drunk that night. Absolutely. And in Hastie, they knew he was drunk that night. He knew he was drunk that night. And also, in our case, Your Honor, there is no evidence that Mr. Malley knew or should have known that Mr. Greasy was ever intoxicated on the vessel. All we know is that there was that he drank beer on some occasion when Mr. Malley was on board. There's no evidence of intoxication. But there were beer cans all over the place. Well, there were beer cans. I don't know if they were all over the place. There is testimony that there were beer cans that were on the boat when Mr. Malley was on board. Whether he saw those and who drank those beer cans or whether they were drunk on shore and somebody put them back on the boat or whatever, we don't have any knowledge there, Your Honor. It's based on a declaration from a third party that was submitted as part of a motion for summary judgment. Anything further? Well, if I can answer any questions. There's three issues basically that were raised. One is the strict liability issue. After ordinary negligence and whether this was. Well, he's not arguing strict liability. I don't think. I thought I heard him concede that. It was standard of care. All right. From the briefing, he was arguing, appellant was arguing strict liability. But if that's been dropped, then I won't address that. The other issue that was only raised on during the, in the appellate briefing that was not raised at the lower court level was whether we breached any sort of statutory requirements. And as we pointed out in our brief. They weren't pertinent statutory requirements. But let's go back to jurisdiction. I actually am quite troubled by that. Because the case in which you rely is a 1959 case. And clearly the Supreme Court modified that rule afterwards. At that point, the rule that was applying was anything that happens in navigable waters is under maritime jurisdiction. And then we have this development from Executive Jet forward, which says, no, that's not so. And the CSUN test, which requires two additional elements. And as far as I can tell, this case is an awfully good candidate, in contrast to the earlier one, for saying that it's just not there. Even though it's in navigable waters. Because the guy who was hurt had nothing to do with anything maritime. Well, but there are current cases, Your Honor, that we've cited to. For example, as the appellant pointed out, there are cases in the cruise ship world where you have visitors coming on board a cruise ship who are injured. And they still, because the vessel is in navigable waters and because the court is determining the relations between a vessel owner and his obligations to people that come on board his vessel, the court has still determined that that's within admiralty jurisdiction. Well, if we're concerned about that, we'll have to ask the briefs. But it is concerning. I have to admit, Your Honor, that it was an issue that was only raised for the first time, that this would be governed by State law, in the reply brief. And we didn't respond to that. The case was couched at the district court level. Is there any reason it would make a difference? Well, it would make a difference whether there was jurisdiction at all. But aside from that issue, would the choice of law make any difference? Your Honor, in our brief, we analogized State law in Washington and what the standard would be for notice and foreseeability. And we believe that the standard in Washington is even higher. We've settled a number of ramshackle cases where the premise owner knew that the person was intoxicated. And there's even a case where the premise owner knew that the person had a knife. And the court found that that was not, in and of itself, sufficient to give rise to the inference of knowledge of the propensity for violence. Thank you. Thank you, counsel. Mr. Ury, you have some reserve time. Yes. Just in response to counsel, I would submit that in this case, the facts of this case are about as close as they can be to the Hastie case. The Hastie case involved a situation where the same policy was violated, someone got hurt. In this case, the policy was allegedly violated by Mr. Greasy. Someone got hurt. Whether or not, in the Hastie case, both people were semen or, in this case, they weren't semen is irrelevant. The standard of care is the same. I believe that in a semen's case, you have to at least prove negligence. Once you prove negligence under the Jones Act, then the causation becomes relaxed. But in both cases, Hastie in this case, the real issue was what is the standard of care, what is the – has negligence been proved or is it provable, and was a genuine issue of material fact raised at the court below, i.e., whether or not Mr. Malley had actual or constructive notice that his self-imposed policy was being violated. I think Mr. Frago's testimony in his declaration in support of summary judgment made it clear that Mr. Malley had to know that his policy was being violated. The Hastie court said that type of evidence should be decided by a jury. Thank you. Roberts. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Berzon, Haddon